IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA SCARDIGNO and        :
MICHAEL SCARDIGNO        : CIVIL ACTION NO. 2:11-cv-07753
       :
       vs.        : Jury Trial Demanded
       :
NEW JERSEY MANUFACTURERS        :
INSURANCE COMPANY        :

## ANSWER WITH AFFIRMATIVE DEFENSES OF DEFENDANT NEW JERSEY MANUFACTURERS INSURANCE COMPANY TO PLAINTIFFS' COMPLAINT

Defendant New Jersey Manufacturers Insurance Company ("Answering Defendant"), responds to the allegations of Plaintiffs' Complaint as follows:

1.     Admitted upon information and belief.

2.     Admitted.

3.     Admitted upon information and belief.

4.     Admitted upon information and belief.

5.     Denied. After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied. Strict proof thereof is demanded at the time of trial. Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

6.     Denied. After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph the same are therefore denied. Strict proof thereof is demanded at the time of trial. Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

806638.2/45608

7.     Denied.   After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial.  Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

8.     Denied.   After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial.  Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

9.     Denied.   After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial.  Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

10.    Admitted upon information and belief.

11.    Denied.   It is specifically denied that the Tortfeasor's bodily injury policy limits were not adequate to fully compensate Plaintiff for the injuries she sustained as a result of the subject collision.   After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial.  Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

12.    Admitted in part; denied in part.  It is admitted that Answering Defendant issued insurance policy number F380839-1 ("the Policy") which insured the vehicle driven by Plaintiff Linda Scardigno and owned by Angelo P. Scardigno.  It is specifically denied that the Exhibit attached to Plaintiffs' Complaint is a true and correct copy of the insurance policy.  By way of

further answer, a true and correct certified copy of the Policy and declarations page is attached as Exhibit "A" and incorporated by reference.

13.    Admitted upon information and belief.

14.    Admitted.

15.    Admitted.  See Exhibit "A," attached hereto.

16.    Denied.    After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial.  Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

17.    Denied.    On the date alleged, plaintiffs' counsel made a written demand of $450,000 and asserted a claim that applicable policy limits were $600,000.

18.    Denied.  The Policy is a document which speaks for itself and is attached hereto as Exhibit A.  The remaining averments of this paragraph are conclusions of law to which no responsive pleading is necessary and the same are therefore denied.

19.    Admitted in part; denied in part.  It is admitted that Plaintiffs may elect to not consent to the arbitration provisions in the Policy.  By way of further answer, the Policy is a document which speaks for itself.  The extent the averments of this paragraph allege that Plaintiffs are entitled to recover underinsured motorist benefits and/or the limits under the Policy for underinsured motorist benefits, the averments are specifically denied.  Strict proof thereof is demanded at the time of trial.  It is specifically denied that the exhibit attached to Plaintiffs' Complaint is a true and correct copy of the insurance policy.

20.    Admitted in part; denied in part.  It is admitted that Answering Defendant has not tendered its policy for underinsured motorist benefits nor made any offer of settlement under the

Policy.  To the extent the averments of this paragraph allege that Plaintiffs are entitled to recover underinsured motorist benefits and/or limits under the Policy for underinsured motorist benefits, the averments are specifically denied.  By way of further response, at all times relevant Answering Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy.

**COUNT I**
**Breach of Contract**
**Linda Scardigno v. New Jersey Manufacturers**

21.     Denied.  Answering Defendant incorporates its answers to paragraphs 1 through 20 of Plaintiffs' Complaint as if set forth herein at length.

22.     Denied.   After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.   Strict proof thereof is demanded at the time of trial.   Plaintiff alleges conclusions of law to which no responsive pleading is necessary.

23.     Denied.   It is specifically denied that the Tortfeasor's liability policy limits are inadequate to fully compensate Plaintiff for the injuries she sustained as a result of the subject collision.  After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.   Strict proof thereof is demanded at the time of trial.   Plaintiff alleges conclusions of law to which no responsive pleading is necessary.

24.     Denied. It is specifically denied that Answering Defendant failed to objectively and fairly evaluate Plaintiff's claim.  By way of further response, at all times relevant Answering

Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy. Plaintiff alleges conclusions of law to which no responsive pleading is necessary.

25.     Denied.    It is specifically denied that Answering Defendant has failed to promptly offer payment of the reasonable and fair value of the claim to Plaintiff.  By way of further response, at all times relevant Answering Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy.    After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial. Plaintiff alleges conclusions of law to which no responsive pleading is necessary.

26.     Denied.    It is specifically denied that Answering Defendant has provided sufficient information and documentation of Plaintiff's claim for underinsurance motorist benefits.  By way of further response, at all times relevant Answering Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy.   After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied. Strict proof thereof is demanded at the time of trial. Plaintiff alleges conclusions of law to which no responsive pleading is necessary.

27.     Denied. It is specifically denied that Answering Defendant failed to reasonably investigate Plaintiff's claim, conduct "a thorough and proper inquiry," and/or that Plaintiff sustained "serious" injuries.  By way of further response, at all times relevant Answering Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy.    After reasonable investigation, Answering Defendant lacks knowledge or

information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial. Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

28.      Admitted in part; denied in part.  It is admitted that Answering Defendant owes a fiduciary, contractual and statutory obligation to Plaintiff to investigate, evaluate and negotiate Plaintiff's underinsured motorist claim in good faith and to arrive at a prompt, fair and equitable settlement.  The extent the averments of this paragraph imply that Answering Defendant did not meet this burden under the Policy and all applicable law, the averments are denied.  By way of further answer, at all times relevant Answering Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy.  Plaintiffs allege a conclusion of law to which no responsive pleading is necessary.

29.      Denied.   It is specifically denied that Answering Defendant has violated its obligations under the Policy.   By way of further answer, at all times relevant Answering Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy.    After reasonable investigation,  Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial. Plaintiffs allege conclusions of law to which no responsive pleading is necessary.

WHEREFORE,  Defendant New Jersey Manufacturers Insurance Company demands that Plaintiffs' Complaint be dismissed with prejudice and judgment be entered in favor of Defendant New Jersey Manufacturers Insurance Company.

## COUNT II
### Bad Faith
### Linda Scardigno v. Defendant New Jersey Manufacturers

30.    Denied.  Answering Defendant incorporates its answers to paragraphs 1 through 29 of Plaintiffs' Complaint as if set forth herein at length.

31.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is necessary and the same are therefore denied.  By way of further answer, Answering Defendant specifically denies that it engaged in bad faith conduct in violation of 42 Pa.C.S.A. §8371 towards Plaintiff Linda Scardigno, and avers to the contrary that at all times relevant, it adjusted the claim in accordance with the terms, conditions and exclusions of the Policy.  Answering Defendant further denies that it:

    a)  Failed to objectively and fairly evaluate Plaintiff's claim;

    b)  Failed objectively and fairly to re-evaluate Plaintiff's claim based on new information;

    c)  Engaged in dilatory and abusive claim handling;

    d)  Failed to adopt or implement reasonable standards in evaluation Plaintiff's claim;

    e)  Acted unreasonably and unfairly in response to Plaintiff's claim;

    f)  Did not attempt in good faith to effectuate a fair, prompt and equitable settlement of Plaintiff's claim in which the Defendant's liability under the policy had become reasonably clear;

    g)  Subordinated the interest of its insured to its financial monetary gain;

    h)  Failed to promptly offer reasonable payment to the Plaintiff;

    i)  Failed to reasonably and adequately investigate Plaintiff's claim;

    j)  Failed to reasonably and adequately evaluate or review the medical documentation in Defendant's possession;

    k)  Violated the fiduciary duty owed to the Plaintiff;

l) Acted unreasonably and unfairly by way of withholding underinsurance motorist benefits justly due and owing to the Plaintiff;

m) Failed to make an honest, intelligent and objective settlement offer;

n) Caused Plaintiff to expend money on the presentation of her claim; and

o) Caused the Plaintiff to bare the stress and anxiety associated with litigation.

32.    Admitted in part; denied in part.  It is admitted that Answering Defendant owes a fiduciary, contractual and statutory obligation to Plaintiff.  The extent the averments of this paragraph imply that Answering Defendant did not meet this obligation under the Policy and all applicable law, the averments are denied.  By way of further answer, at all times relevant Answering Defendant has acted in good faith and in accordance with the applicable terms and conditions of the Policy.  Plaintiff alleges conclusions of law to which no responsive pleading is necessary.

33.    Denied.   After reasonable investigation, Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and the same are therefore denied.  Strict proof thereof is demanded at the time of trial.  Plaintiff alleges conclusions of law to which no responsive pleading is necessary.

34.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is necessary and the same are therefore denied.  By way of further answer, Answering Defendant specifically denies that it engaged in any bad faith conduct in violation of 42 Pa.C.S.A. §8371 towards Plaintiffs, and avers to the contrary that at all times it adjusted the claim in accordance with the terms, conditions and exclusions of the Policy.

35.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is necessary and the same are therefore denied.  By way of further answer, Answering Defendant specifically denies that it engaged in wanton, reckless and/or bad

faith conduct in violation of 42 Pa.C.S.A. §8371 towards Plaintiffs, and avers to the contrary that at all times it adjusted the claim in accordance with the terms, conditions and exclusions of the Policy.

WHEREFORE,  Defendant New Jersey Manufacturers Insurance Company demands that Plaintiffs' Complaint be dismissed with prejudice and judgment be entered in favor of Defendant New Jersey Manufacturers Insurance Company.

## COUNT III
### Michael Scardigno v. New Jersey Manufacturers
### LOSS OF CONSORTIUM

36.    Denied.  Answering Defendant incorporates its answers to paragraphs 1 through 35 of Plaintiffs' Complaint as if set forth herein at length.

37.    Admitted upon information and belief.

38.    Denied.  The averments of this paragraph constitute conclusions of law to which no responsive pleading is necessary and the same are therefore denied.  By way of further answer, Answering Defendant avers that at all times it adjusted the claim in accordance with the terms, conditions and exclusions of the Policy.

WHEREFORE,  Defendant New Jersey Manufacturers Insurance Company demands that Plaintiffs' Complaint be dismissed with prejudice and judgment be entered in favor of Defendant New Jersey Manufacturers Insurance Company.

## AFFIRMATIVE DEFENSES

39.    Defendant New Jersey Manufacturers incorporates by reference its responses to paragraphs 1 through 38 of Plaintiffs' Complaint as if set forth herein at length.

## FIRST AFFIRMATIVE DEFENSE

40.     Plaintiffs' Complaint fails to state a cause of action or a claim for UIM benefits, bad faith, loss of consortium, or otherwise for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

41.     Plaintiffs' claims may be barred by the applicable statute of limitations, including the suit limitation set forth in the policy.

## THIRD AFFIRMATIVE DEFENSE

42.     The damages claimed by Plaintiffs are not all covered by the Policy or are specifically excluded by the Policy.

## FOURTH AFFIRMATIVE DEFENSE

43.     Plaintiffs' claims may be barred by the doctrines of laches, estoppel or waiver.

## FIFTH AFFIRMATIVE DEFENSE

44.     Plaintiffs' claims may be barred, in whole or in part, by the terms, conditions, exclusions, exceptions, limitations, and/or limits of liability of the Policy.

## SIXTH AFFIRMATIVE DEFENSE

45.     Plaintiffs' claims may be barred, in whole or in part, by Plaintiffs' failure to reasonably cooperate with Defendant New Jersey Manufacturers by failing to provide it with timely, complete and legible information necessary to adjust the claim.

## SEVENTH AFFIRMATIVE DEFENSE

46.     Plaintiffs are precluded from recovery of benefits that have been paid or payable pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS.STAT. § 1701 *et seq.*

## EIGHTH AFFIRMATIVE DEFENSE

47.     The damages claimed by Plaintiffs are not reasonable and necessary but are instead excessive and unreasonable.

## NINTH AFFIRMATIVE DEFENSE

48.     Plaintiffs' claims may be barred in whole or in part for failing to comply with all conditions which are precedent under the Policy.

## TENTH AFFIRMATIVE DEFENSE

49.     Plaintiffs failed to mitigate their damages thus relieving Defendant New Jersey Manufacturers of any obligation under the Policy and/or reducing or barring any verdict.

## ELEVENTH AFFIRMATIVE DEFENSE

50.     Plaintiffs breached the Policy and accordingly Defendant New Jersey Manufacturers has no duty under the Policy.

## TWELFTH AFFIRMATIVE DEFENSE

51.     Plaintiffs' claims may be barred in whole or in part by the material misrepresentation of the Plaintiffs and/or Plaintiffs' agent and/or workmen as to the nature of the extent of the damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

52.     Plaintiffs' claims are subject to all of the terms, conditions, limitations and exclusions in the policy.

## FOURTEENTH AFFIRMATIVE DEFENSE

53.     Defendant New Jersey Manufacturers' liability is based on the policy of insurance which is the contract between the parties, and application of a legal rule so as to broaden

Defendant New Jersey Manufacturers' liability would be an unconstitutional impairment of that insurance contract.

## FIFTEENTH AFFIRMATIVE DEFENSE

54.     Defendant New Jersey Manufacturers' liability is based on the policy of insurance that is the contract between the parties and application of a legal rule so as to broaden Defendant New Jersey Manufacturers' liability would be a taking of property without due process of law.

## SIXTEENTH AFFIRMATIVE DEFENSE

55.     Defendant New Jersey Manufacturer's liability is based on the policy of insurance and application of a legal rule so as to broaden Defendant New Jersey Manufacturer's liability is barred as a matter of equity.

## SEVENTEENTH AFFIRMATIVE DEFENSE

56.     Plaintiffs are not entitled to recover attorneys' fees, costs or any other special or exemplary damages in this matter since Defendant New Jersey Manufacturer's alleged withholding of any benefits at issue was made in good faith and was reasonable.

## EIGHTEENTH AFFIRMATIVE DEFENSE

57.     Defendant New Jersey Manufacturers avers that some, if not all of the delays in the handling and processing of this claim were caused by the Plaintiffs' failure and/or inability to promptly provide full and complete information/documentation regarding their claim.

## NINETEENTH AFFIRMATIVE DEFENSE

58.     Defendant New Jersey Manufacturers avers that some, if not all, of the delays in the handling and processing of this claim were caused by the Plaintiffs' failure to provide and/or refusal to provide prompt and/or reasonable responses to Defendant New Jersey Manufacturer's inquiries and/or offers.

## TWENTIETH AFFIRMATIVE DEFENSE

59.     Defendant New Jersey Manufacturers avers that some, if not all, of the delays in the handling and processing of this claim were caused by others.

## TWENTY FIRST AFFIRMATIVE DEFENSE

60.     The Policy is clear and unambiguous.

## TWENTY SECOND AFFIRMATIVE DEFENSE

61.     Plaintiffs' claims may be barred in whole or in part by Plaintiffs' failure to act in good faith.

## TWENTY THIRD AFFIRMATIVE DEFENSE

62.     Plaintiffs are not entitled to a jury trial on the claim for bad faith pursuant to 42 Pa. C.S.A. §8371.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

63.     Defendant New Jersey Manufacturers denies any liability whatsoever.  To the extent that it is judicially determined that any coverage is owing:

      a.     loss settlement is controlled by the applicable provisions of the policy including policy limits;

      b.     Defendant New Jersey Manufacturers is in no event obliged to pay more than set forth in the policy and the limits of coverage; and

      c.     Defendant New Jersey Manufacturers reserves all other rights as set forth in the policy.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

64.     As of the date of this pleading, Plaintiffs have received, or are about to receive, funds from the tortfeasor-driver with Defendant New Jersey Manufacturer's consent, and Defendant New Jersey Manufacturers is entitled to a credit or offset of that amount against any award herein.

WHEREFORE, Defendant New Jersey Manufacturers Insurance Company demands that Plaintiffs' Complaint be dismissed with prejudice and judgment be entered in favor of Defendant New Jersey Manufacturers Insurance Company.

CURTIN & HEEFNER LLP

By: _____
Frank S. Guarrieri, Esquire
Attorney I.D. #25922
Attorney for Defendant New Jersey
Manufacturers Insurance Company
250 North Pennsylvania Avenue
PO Box 217
Morrisville, PA 19067
(215) 736-2521

Date: _December 29, 2011_

806638.2/45608

# EXHIBIT  A

**NEW JERSEY MANUFACTURERS INSURANCE COMPANY** *"CERTIFIED TO BE A TRUE COPY"*
WEST TRENTON, NEW JERSEY 08628-0118

## DECLARATIONS

AUTOMOBILE POLICY DECLARATIONS

INT. _KLM_   DATE _12/20/11_

NAMED INSURED AND ADDRESS

ANGELO P SCARDINGO
3151 EMERALD BLVD 1ST FL
LONG POND PA 18334

**POLICY PERIOD**
FROM 11 15 2009  TO 11 15 2010
MO. DAY YR.   MO. DAY YR.
12:01 A.M. STANDARD TIME

**POLICY NUMBER** F380839-1

THE AUTO(S) OR TRAILER(S) DESCRIBED IN THIS POLICY IS (ARE) PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED:

COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE.

| Description of Auto or Trailer | YEAR & TRADE NAME | BODY TYPE OR MODEL | SERIAL NUMBER | Terr. | Class | Sym | DT | GS | AT | PR | AL | TORT | DI | TE | HC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CAR 04 | 2008 FORD | 4 DOOR | 1FAHP35N98W244720 | 55 | 887320 | H | | | T33B | | | LMT | | 50 | |
| CAR 05 | 2009 FORD | 4 DOOR | 1FAHP35N59W171900 | 55 | 880120 | H | | | T33 | | | LMT | | 50 | |

| Coverages and Limit of Liability | A. LIABILITY EACH ACCIDENT | B. UNINSURED MOTORISTS (UM) | C. UNDERINSURED MOTORISTS (UIM) | D. | E.1 COLLISION LOSS | E.2 OTHER THAN COLLISION LOSS | F. TOWING & LABOR COSTS EACH DISABLEMENT |
|---|---|---|---|---|---|---|---|
| CAR 04 | $ 500,000 | $300,000 | $300,000 | | $ 200 DED | $ 100 DED | |
| CAR 05 | $ 500,000 | $300,000 | $300,000 | | $ 200 DED | $ 100 DED | |

G. ADDED FIRST PARTY BENEFITS
1. MEDICAL   $100,000
2. WORK   A.   NONE
   LOSS   B.   NONE
3. FUNERAL   $2,500
4. DEATH   $5,000
5. EMB   1,000,000

| PREMIUM | A. | B. | C. | D. | E.1. | E.2. | F. | G. | TOTALS |
|---|---|---|---|---|---|---|---|---|---|
| CAR 04 | 4E$ 295 | D$ 22 | D$ 86 | A$ | 3$ 501 | 4$ 220 | $ | $ 74 | $ 1198.00 |
| CAR 05 | 4E$ 237 | D$ 22 | D$ 86 | A$ | 3$ 401 | 4$ 178 | $ | $ 65 | $ 989.00 |

ENDORSEMENTS MADE A PART OF THIS POLICY AS OF THE EFFECTIVE DATE OF THESE DECLARATIONS:
A-711 (02/08) PERSONAL AUTO POLICY
A-624 (1/09) UM COV-PA (STACKED)
A-625 (1/09) UIM COV-PA (STACKED)
A-12 (12/92) EXTRAORDINARY MED BENEFIT (EMB) 0% FPB
A-623 (7/99) LIMITED TORT NOTICE
F01371 (03/07) INCREASED TRANSPORTATION EXP

ENDORSEMENT PREMIUM $
TOTAL POLICY PREMIUM   2187.00
2008 DIVIDEND = 5% PHYS DAMAGE, 5% LIABILITY, 0% FPB   -   90.35
BALANCE   $ 2096.65

COLLISION COVERAGE PROVIDED BY THE POLICY APPLIES TO A SHORT-TERM RENTAL OF A PRIVATE PASSENGER AUTO; AND A PICKUP, VAN, OR TRAILER NOT USED FOR BUSINESS PURPOSES.  COVERAGE DOES NOT APPLY TO A RENTAL VEHICLE USED IN THE BUSINESS OF SELLING, REPAIRING, SERVICING, STORING OR PARKING AUTOS.

LOSS PAYEE:
04 FORD MOTOR CR CO
   PO BOX 390910,MINNEAPOLIS MN 55439

05 PNC BANK NA
   PO BOX 25489,FORT WORTH TX 76124

COUNTERSIGNED AT TRENTON, NEW JERSEY ON 10/23/2009
THIS POLICY SHALL NOT BE VALID UNLESS COUNTERSIGNED 08272009
BY OUR AUTHORIZED AGENT.

114
H52
SCH=1
F0049 (01/07)

"CERTIFIED TO BE A TRUE COPY"

Kim                    12/20/11
INT.                   DATE

──── Pennsylvania ────

# Personal

# Auto

# Policy

**New Jersey Manufacturers
Insurance Company**

# NJM Insurance Group

## YOUR PERSONAL AUTO POLICY
## QUICK REFERENCE

**DECLARATIONS**

Your Name and Address  Policy Period
Your Auto or Trailer   Coverages and Amounts
Endorsements     of Insurance

Beginning On Page

**AGREEMENT**             1

**DEFINITIONS**            1

**PART A -  LIABILITY COVERAGE**     3

Insuring Agreement    Out of State Coverage
Supplementary Payments   Financial Responsibility
Exclusions       Other Insurance
Limit of Liability

**PART B -  FIRST PARTY BENEFITS  COVERAGE-
      PENNSYLVANIA (PP 05 51 06 94)**   7

SCHEDULE

I. DEFINITIONS

II. FIRST PARTY BENEFITS COVERAGE

Insuring Agreement    Priorities of Policies
Exclusions       Non-Duplication of Benefits
Limit of Liability

III. PART F - GENERAL PROVISIONS

**PART C -  COVERAGE FOR DAMAGE TO YOUR AUTO** 13

Insuring Agreement    Payment of Loss
Transportation Expenses   No Benefit to Bailee
Exclusions       Other Sources of Recovery
Limit of Liability     Appraisal

**PART D -  TOWING AND LABOR COSTS COVERAGE
      (PP 03 03 04 86)**       19

**PART E -  DUTIES AFTER AN ACCIDENT OR LOSS**  19

**PART F -   GENERAL PROVISIONS**                                          20
  Bankruptcy                    Policy Period and Territory
  Changes                       Termination
  Fraud                         Transfer of Your Interest
  Legal Action Against Us          in This Policy
  Our Right to Recover          Two or More Auto Policies
    Payment                     Constitutionality Clause

**LOSS PAYABLE CLAUSE (PP 03 05 08 86)**                                   24

**PENNSYLVANIA NOTICE**                                                    25

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**PREMIUM -** The premium in the Declarations is the initial premium for this policy. On each renewal, continuation or anniversary of the effective date of this policy the premium shall be computed by us in accordance with our manuals then in use.

---

In accordance with Pennsylvania Law, we hereby advise you that we do not surcharge for accidents and/or convictions under the **Safe Driver Insurance Plan** or any other surcharge plan.

---

PP 00 01 06 98   PP 01 51 03 05   PP 03 03 04 86   PP 13 01 12 99
    PP 03 05 08 86     PP 05 51 06 94    IL 09 10 07 02
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1981, 1986, 1992, 1993, 1994, 1996, 1997, 1998, 1999, 2001

**PERSONAL AUTO POLICY**

---

**AGREEMENT**

---

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

**DEFINITIONS**

---

A. Throughout this policy, you and your refer to:
1.  The named insured shown in the Declarations; and
2.  The spouse if a resident of the same household.

B. We, us and our refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:
1.  Under a written agreement to that person; and
2.  For a continuous period of at least 6 months.

Other words and phrases are defined. They are boldfaced when used.

D. **Bodily injury** means bodily harm, sickness or disease, including death that results.

E. **Business** includes trade, profession or occupation.

F. **Family member** means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. **Occupying** means in, upon, getting in, on, out or off.

H. **Property damage** means physical injury to, destruction of or loss of use of tangible property.

I. **Trailer** means a vehicle designed to be pulled by a:
1.  Private passenger auto; or
2.  Pickup or van.

    It also means a farm wagon or farm implement while towed by a vehicle listed in "1." or "2." above.

J. **Your covered auto** means:
1.  Any vehicle shown in the Declarations.
2.  A **newly acquired auto.**
3.  Any **trailer** you own.

Personal Auto Policy A-711 (02/08)                                                      1

4.  Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    a.  Breakdown;

    b.  Repair;

    c.  Servicing;

    d.  Loss; or

    e.  Destruction.

    This provision ("4.") does not apply to Coverage For Damage To Your Auto.

K.  **Newly acquired auto** means:

    1.  Any of the following types of vehicles you become the owner of during the policy period:

        a.  A private passenger auto; or

        b.  A pickup or van, for which no other insurance policy provides coverage, that:

            (1) Has a Gross Vehicle Weight not exceeding 9,000 lbs.; and

            (2) Is not principally used in any **business** other than farming or ranching.

    2.  Coverage for a **newly acquired auto** is provided as described below.  If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

        a.  For any coverage provided in this policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a **newly acquired auto** which in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

            If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

        b.  Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

            (1) 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

Personal Auto Policy A-711 (02/08)

    (2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

    (1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

    (2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, an Other Than Collision deductible of $500 will apply.

L. **Noneconomic loss** means pain and suffering and other nonmonetary detriment.

M. **Serious injury** means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

N. **Diminution in value** means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of the policy limits. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

B. **Insured** as used in this Part means:

    1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

    2. Any person using **your covered auto**.

Personal Auto Policy A-711 (02/08)

3

3. For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or **trailer**, other than **your covered auto**, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision ("B.4.") applies only if the person or organization does not own or hire the auto or **trailer**.

## SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an **insured**:

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

6. Prejudgment interest awarded against the **insured** on the part of the judgment we pay. Any prejudgment interest awarded against the **insured** is subject to the applicable Pennsylvania Rules of Civil Procedure.

## EXCLUSIONS

A. We do not provide Liability Coverage for any **insured**:

1. Who intentionally causes **bodily injury** or **property damage**.

2. For **property damage** to property owned or being transported by that **insured**.

3. For **property damage** to property:

   a. Rented to;

   b. Used by; or

   c. In the care of;

   that **insured**.

   This exclusion ("A.3.") does not apply to **property damage** to a residence or private garage.

4. For **bodily injury** to an employee of that **insured** during the course of employment. This exclusion ("A.4.") does not apply to **bodily injury** to a

Personal Auto Policy A-711 (02/08)

domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion ("A.5.") does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the **business** of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion ("A.6.") does not apply to the ownership, maintenance or use of **your covered auto** by:

   a.   You;

   b.   Any **family member**; or

   c.   Any partner, agent or employee of you or any **family member**.

7. Maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in Exclusion "A.6."

   This exclusion ("A.7.") does not apply to the maintenance or use of a:

   a.   Private passenger auto;

   b.   Pickup or van; or

   c.   **Trailer** used with a vehicle described in "a." or "b." above.

8. Using a vehicle without a reasonable belief that that **insured** is entitled to do so. This exclusion ("A.8.") does not apply to a **family member** using **your covered auto** which is owned by you.

9. For **bodily injury** or **property damage** for which that **insured**:

   a.   Is an insured under a nuclear energy liability policy; or

   b.   Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a.   Nuclear Energy Liability Insurance Association;

   b.   Mutual Atomic Energy Liability Underwriters; or

   c.   Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

  1. Any vehicle which:

    a. Has fewer than four wheels; or

    b. Is designed mainly for use off public roads.

    This exclusion ("B.1.") does not apply:

    a. While such vehicle is being used by an **insured** in a medical emergency;

    b. To any **trailer**; or

    c. To any non-owned golf cart.

  2. Any vehicle, other than **your covered auto**, which is:

    a. Owned by you; or

    b. Furnished or available for your regular use.

  3. Any vehicle, other than **your covered auto**, which is:

    a. Owned by any **family member**; or

    b. Furnished or available for the regular use of any **family member**.

    However, this exclusion ("B.3.") does not apply to you while you are maintaining or **occupying** any vehicle which is:

    a. Owned by a **family member**; or

    b. Furnished or available for the regular use of a **family member**.

  4. Any vehicle, located inside a facility designed for racing, for the purpose of:

    a. Competing in; or

    b. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

  1. **Insureds**;

  2. Claims made;

  3. Vehicles or premiums shown in the Declarations; or

  4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

  1. Part B of this policy; or

  2. Any Uninsured or Underinsured Motorists Coverage provided by this policy.

Personal Auto Policy A-711 (02/08)

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

A.  If the state or province has:

1.  A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2.  A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B.  No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any collectible insurance.

---

### PART B - FIRST PARTY BENEFITS COVERAGE - PENNSYLVANIA (PP 05 51 06 94)

---

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

## SCHEDULE

**Basic First Party Benefit** - Applies if "Basic First Party Benefit" appears next to "Coverage G." in the Declarations.

| Benefit | Limit of Liability |
|---|---|
| Medical Expenses | $5,000 |

If indicated in the Declarations, the following options apply instead of the Basic First Party Benefit:

**Added First Party Benefits** - Applies if "Added First Party Benefits" appears next to "Coverage G." in the Declarations.

| Benefits | Limit of Liability |
|---|---|
| Medical Expenses | The amount shown opposite "1." of "Coverage G." in the Declarations |

Personal Auto Policy A-711 (02/08)                                        7

| | |
|---|---|
| Work Loss | The amount shown opposite "2.A." of "Coverage G." in the Declarations subject to a maximum per month of the amount shown opposite "2.B." of "Coverage G." |
| Funeral Expenses | The amount shown opposite "3." of "Coverage G." in the Declarations |
| Accidental Death | The amount shown opposite "4." of "Coverage G." in the Declarations |

**Combination First Party Benefits** - Applies if "Combination First Party Benefits" appears next to "Coverage G." in the Declarations.

| Benefits | Limit of Liability |
|---|---|
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Funeral Expenses | The amount shown opposite "4." of "Coverage G." in the Declarations |
| Accidental Death | The amount shown opposite "5." of "Coverage G." in the Declarations |
| Maximum Limit of Liability For The Total of All Combination First Party Benefits | The amount shown opposite "1." of "Coverage G." in the Declarations |

**Note:** If Added First Party Benefits or Combination First Party Benefits are not shown as applicable in Coverage G. of the Declarations, only the Basic First Party Benefit applies.

## I.  DEFINITIONS

The Definitions section is amended as follows:

A.  **The Act** refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

B.  The following definitions are replaced:

   1.  **Bodily injury** means accidental bodily harm to a person and that person's resulting illness, disease or death.

   2.  **Your covered auto** means a **motor vehicle:**

       a.  To which Part A of this policy applies and for which a specific premium is charged; and

       b.  For which First Party Benefits Coverage required by the Act is maintained.

C.  The following definition is added:

Personal Auto Policy A-711 (02/08)

**Motor vehicle** means a self-propelled vehicle, operated or designed for use upon public roads. However, **motor vehicle** does not include a vehicle operated:

1. By muscular power; or

2. On rails or tracks.

D. **Insured** as used in this endorsement means:

1. You or any **family member**.

2. Any other person while:

   a. **Occupying your covered auto**; or

   b. Not **occupying** a **motor vehicle** if injured as a result of an accident in Pennsylvania involving **your covered auto**.

   If **your covered auto** is parked and unoccupied it is not a **motor vehicle** involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

## II. FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT

A. **BASIC FIRST PARTY BENEFIT**

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an accident arising out of the maintenance or use of a **motor vehicle**.

Subject to the limit shown as applicable in Coverage G. of the Declarations, the Basic First Party Benefit consists of:

Medical expenses. Reasonable and necessary medical expenses incurred for an **insured's**:

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing **bodily injury**. However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

B. **ADDED FIRST PARTY BENEFITS**

If Coverage G. of the Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party

Benefit to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an accident arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Declarations, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.

2. Work loss.

   a. Loss of income. Up to 80% of gross income actually lost by an **insured** as a result of the accident.

   b. Reasonable expenses actually incurred to reduce loss of income by hiring:

      (1) Special help, thereby enabling an **insured** to work; or

      (2) A substitute to perform the work a self-employed **insured** would have performed.

   However, work loss does not include:

   a. Loss of expected income or expenses incurred for services performed after the death of an **insured**; or

   b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the **insured** did not work due to **bodily injury**.

3. Funeral expenses. Funeral or burial expenses actually incurred if **bodily injury** causes an **insured's** death within 24 months from the date of the accident.

4. Accidental death. A death benefit paid if **bodily injury** causes the death of you or any **family member** within 24 months from the date of the accident.

   We will pay accidental death to the executor or administrator of the deceased **insured's** estate. If there is no executor or administrator, the benefit shall be paid to:

   a. The deceased **insured's** surviving spouse; or

   b. If there is no surviving spouse, the deceased **insured's** surviving children; or

   c. If there is no surviving spouse or children, to the deceased **insured's** estate.

## C. COMBINATION FIRST PARTY BENEFITS

If Coverage G. of the Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an **insured** who sustains **bodily**

10                                              Personal Auto Policy A-711 (02/08)

**injury**. The **bodily injury** must be caused by an accident arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

1.  Medical expenses.
2.  Work loss.
3.  Funeral expenses.
4.  Accidental death.

We will only pay Combination First Party Benefits for expenses or loss incurred within 3 years from the date of the accident.

## EXCLUSIONS

A.  We do not provide First Party Benefits Coverage for **bodily injury** sustained by any **insured**:

1.  While intentionally causing or attempting to cause **bodily injury** to himself or any other person. We will not pay accidental death on behalf of that **insured**.

2.  While committing a felony.

3.  While seeking to elude lawful apprehension or arrest by a law enforcement official.

4.  While maintaining or using a **motor vehicle** knowingly converted by that **insured**. This exclusion ("A.4.") does not apply to:

    a.  You; or

    b.  Any **family member**.

5.  Who, at the time of the accident, is:

    a.  The owner of one or more registered **motor vehicles**, none of which have in effect the financial responsibility required by the Act; or

    b.  **Occupying** a **motor vehicle** owned by that **insured** for which the financial responsibility required by the Act is not in effect.

6.  Maintaining or using a **motor vehicle** while located for use as a residence or premises.

7.  While **occupying** a:

    a.  Recreational vehicle designed for use off public roads; or

    b.  Motorcycle, moped or similar-type vehicle.

B.  We do not provide First Party Benefits Coverage for **bodily injury**:

1.  Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion ("B.1.") does not apply to:

Personal Auto Policy A-711 (02/08)                                    11

    a.  You; or

    b.  Any **family member.**

  2.  Caused by or as a consequence of:

    a.  Discharge of a nuclear weapon (even if accidental);

    b.  War (declared or undeclared);

    c.  Civil war;

    d.  Insurrection; or

    e.  Rebellion or revolution.

  3.  From or as a consequence of the following, whether controlled or un-controlled or however caused:

    a.  Nuclear reaction;

    b.  Radiation; or

    c.  Radioactive contamination.

## LIMIT OF LIABILITY

A.  The limits of liability shown in the Declarations for the first party benefits that apply are the most we will pay to or for each **insured** as the result of any one accident, regardless of the number of:

  1.  Claims made;

  2.  Vehicles or premiums shown in the Declarations;

  3.  Vehicles involved in the accident; or

  4.  Insurers providing first party benefits.

B.  If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision ("B.") will not change our maximum limit of liability.

C.  Any amounts payable under this coverage shall be excess over any amounts:

  1.  Paid;

  2.  Payable; or

  3.  Required to be provided;

to an **insured** under any workers' compensation law or similar law.

## PRIORITIES OF POLICIES

A.  We will pay first party benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The **First** category listed below is the highest level of priority and the **Fourth** category is the lowest level of priority. The priority order is:

**First**      The insurer providing benefits to the **insured** as a named insured.

12                                     Personal Auto Policy A-711 (02/08)

**Second**     The insurer providing benefits to the **insured** as a family member who is not a named insured under another policy providing coverage under the Act.

**Third**      The insurer of the **motor vehicle** which the **insured** is **occupying** at the time of the accident.

**Fourth**     The insurer of any **motor vehicle** involved in the accident if the **insured** is not:

    a.  **Occupying** a **motor vehicle**; and

    b.  Provided first party benefits under any other automobile policy.

An unoccupied parked **motor vehicle** is not a **motor vehicle** involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

B.  If 2 or more policies have equal priority within the highest applicable priority level:

1.  The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the **Fourth** priority, proration shall be based on the number of involved motor vehicles.

2.  If we are the insurer against whom the claim is first made, our payment to or for an **insured** will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Declarations.

3.  The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

## III. PART F - GENERAL PROVISIONS

Part F is amended as follows:

The Our Right To Recover Payment provision does not apply.

---

## PART C - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A.  We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one **your covered auto** or **non-owned**

**auto** results from the same **collision**, only the highest applicable deductible will apply. We will pay for  loss to  **your covered auto** caused by:

1.  Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2.  **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto**, we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. **Collision** means the upset of **your covered auto** or a **non-owned auto** or their impact with another vehicle or object.

Loss caused by the following is considered other than **collision**:

1.  Missiles or falling objects;
2.  Fire;
3.  Theft or larceny;
4.  Explosion or earthquake;
5.  Windstorm;
6.  Hail, water or flood;
7.  Malicious mischief or vandalism;
8.  Riot or civil commotion;
9.  Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a **collision**, you may elect to have it considered a loss caused by **collision**.

C. **Non-owned auto** means:

1.  Any private passenger auto, pickup, van or **trailer** not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member**; or

2.  Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

    a.  Breakdown;
    b.  Repair;
    c.  Servicing;
    d.  Loss; or
    e.  Destruction.

## TRANSPORTATION EXPENSES

A. In addition,  we will pay, without application of a deductible, up to $20 per day, to a maximum of $600, for:

14                              Personal Auto Policy A-711 (02/08)

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to **your covered auto**. We will pay for such expenses if the loss is caused by:

   a. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   b. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a **non-owned auto**. We will pay for such expenses if the loss is caused by:

   a. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for any **your covered auto**.

   b. **Collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto**.

   However, the most we will pay for any expenses for loss of use is $20 per day.

B. If the loss is caused by:

1. A total theft of **your covered auto** or a **non-owned auto**, we will pay only expenses incurred during the period:

   a. Beginning 48 hours after the theft; and

   b. Ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

2. Other than theft of a **your covered auto** or a **non-owned auto**, we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

C. Our payment will be limited to that period of time reasonably required to repair or replace the **your covered auto** or the **non-owned auto**.

## EXCLUSIONS

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance.  This exclusion ("1.") does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure; or

   d. Road damage to tires.

   This exclusion ("2.") does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto**.

3. Loss due to or as a consequence of:

    a. Radioactive contamination;

    b. Discharge of any nuclear weapon (even if accidental);

    c. War (declared or undeclared);

    d. Civil war;

    e. Insurrection; or

    f. Rebellion or revolution.

4. Loss to any electronic equipment designed for the reproduction of sound and any accessories used with such equipment. This includes but is not limited to:

    a. Radios and stereos;

    b. Tape decks; or

    c. Compact disc players.

This exclusion ("4.") does not apply to equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

    a. The equipment is permanently installed in **your covered auto** or any **non-owned auto**; or

    b. The equipment is:

        (1) Removable from a housing unit which is permanently installed in the auto;

        (2) Designed to be solely operated by use of the power from the auto's electrical system; and

        (3) In or upon **your covered auto** or any **non-owned auto** at the time of the loss.

5. Loss to any electronic equipment that receives or transmits audio, visual or data signals and any accessories used with such equipment. This includes but is not limited to:

    a. Citizens band radios;

    b. Telephones;

    c. Two-way mobile radios;

    d. Scanning monitor receivers;

    e. Television monitor receivers;

    f. Video cassette recorders;

    g. Audio cassette recorders; or

    h. Personal computers;

This exclusion ("5.") does not apply to:

    a. Any electronic equipment that is necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

    b. A permanently installed telephone designed to be operated by use of the power from the auto's electrical system and any accessories used with the telephone.

16                                 Personal Auto Policy A-711 (02/08)

6.  Loss to tapes, records, discs or other media used with equipment described in exclusions "4." and "5".

7.  A total loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities.

    This exclusion ("7.") does not apply to the interests of Loss Payees in **your covered auto.**

8.  Loss to:

    a.  A **trailer**, camper body, or motor home, which is not shown in the Declarations; or

    b.  Facilities or equipment used with such **trailer**, camper body or motor home. Facilities or equipment include but are not limited to:

        (1) Cooking, dining, plumbing or refrigeration facilities;

        (2) Awnings or cabanas; or

        (3) Any other facilities or equipment used with a **trailer**, camper body, or motor home.

    This exclusion ("8.") does not apply to a:

    a.  **Trailer**, and its facilities or equipment, which you do not own; or

    b.  **Trailer**, camper body, or the facilities or equipment in or attached to the **trailer** or camper body, which you:

        (1) Acquire during the policy period; and

        (2) Ask us to insure within 14 days after you become the owner.

9.  Loss to any **non-owned auto** when used by you or any **family member** without a reasonable belief that you or that **family member** are entitled to do so.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    a.  Special carpeting or insulation;

    b.  Furniture or bars;

    c.  Height-extending roofs; or

    d.  Custom murals, paintings or other decals or graphics.

    This exclusion ("11.") does not apply to a cap, cover or bedliner in or upon any **your covered auto** which is a pickup.

12. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the **business** of:

    a.  Selling;

    b.  Repairing;

    c.  Servicing;

Personal Auto Policy A-711 (02/08)                                         17

    d.  Storing; or

    e.  Parking;

    vehicles designed for use on public highways. This includes road testing and delivery.

13. Loss to **your covered auto** or any **non-owned auto**, located inside a facility designed for racing, for the purpose of:

    a.  Competing in; or

    b.  Practicing or preparing for;

    any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a **non-owned auto** rented by:

    a.  You; or

    b.  Any **family member**;

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member**, pursuant to the provisions of any applicable rental agreement or state law.

15. Loss to **your covered auto** or any **non-owned auto** due to **diminution in value**.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

    1.  Actual cash value of the stolen or damaged property; or

    2.  Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

    1.  Any **non-owned auto** which is a **trailer** is $500.

    2.  Equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

    1.  You; or

    2.  The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

18                                      Personal Auto Policy A-711 (02/08)

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits.  However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible source of recovery including, but not limited to:

1.  Any coverage provided by the owner of the **non-owned auto**;

2.  Any other applicable physical damage insurance;

3.  Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire.  The appraisers will state separately the actual cash value and the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding. Each party will:

1.  Pay its chosen appraiser; and

2.  Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

---

### PART D - TOWING AND LABOR COSTS COVERAGE
### (PP 03 03 04 86)

---

We will pay towing and labor costs incurred each time **your covered auto** or any **non-owned auto** is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a **non-owned auto** is disabled, we will provide the broadest towing and labor costs coverage applicable to any **your covered auto** shown in the Declarations. We will only pay for labor performed at the place of disablement.

---

### PART E - DUTIES AFTER AN ACCIDENT OR LOSS

---

If an accident or loss occurs, the following must be done for the terms of the policy to apply:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured

persons and of any witnesses.

B. A person seeking any coverage must:

   1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

   3. Submit, as often as we reasonably require:

      a. To physical exams by physicians we select.  We will pay for these exams.

      b. To examination under oath and subscribe the same.

   4. Authorize us to obtain:

      a. Medical reports; and

      b. Other pertinent records.

   5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

   1. Promptly notify the police if a hit-and-run driver is involved.

   2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

   1. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and their equipment from further loss.  We will pay reasonable expenses incurred to do this.

   2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

   3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART F - GENERAL PROVISIONS

---

### BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us.  Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium.  Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

   1. The number, type or use classification of insured vehicles;

   2. Operators using insured vehicles;

3.   The place of principal garaging of insured vehicles;

4.   Coverage, deductible or limits.

If a change resulting from "A." or "B." requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C.  If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph ("C.") does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1.   A subsequent edition of your policy; or

2.   An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any **insured** who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A.  No legal action may be brought against us until there has been full compliance with all the terms of this policy.  In addition, under Part A, no legal action may be brought against us until:

1.   We agree in writing that the **insured** has an obligation to pay; or

2.   The amount of that obligation has been finally determined by judgment after trial.

B.  No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured**.

## OUR RIGHT TO RECOVER PAYMENT

A.  If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1.   Whatever is necessary to enable us to exercise our rights; and

2.   Nothing after loss to prejudice them.

However, our rights in this paragraph ("A.") do not apply under Part C, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B.  If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1.   Hold in trust for us the proceeds of the recovery; and

    2.   Reimburse us to the extent of our payment less reasonable attorneys' fees, costs and expenses incurred by that person in collecting our share of the recovery.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

    1.   During the policy period as shown in the Declarations; and

    2.   Within the policy territory.

B. The policy territory is:

    1.   The United States of America, its territories or possessions;

    2.   Puerto Rico; or

    3.   Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

## TERMINATION

### 1. Cancellation

This policy may be cancelled during the policy period as follows:

    a.   The named insured shown in the Declarations may cancel by:

        (1)  Returning this policy to us; or

        (2)  Giving us advance written notice of the date cancellation is to take effect.

    b.   We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

        (1)  At least 15 days notice of cancellation:

            (a)  If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

            (b)  For nonpayment of premium;

            (c)  If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

        (2)  At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

22                      Personal Auto Policy A-711 (02/08)

2. **Nonrenewal**

   If we decide not to renew or continue this policy, we will mail to the named insured shown in the Declarations at the address shown in this policy:

   a. At least 15 days notice before the end of the policy period:

      (1) For nonpayment of premium; or

      (2) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

   b. At least 60 days notice before the end of the policy period in all other cases.

   However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

3. **Automatic Termination**

   If we offer to renew or continue and the named insured shown in the Declarations or that **insured's** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that the named insured shown in the Declarations has not accepted our offer.

4. **Other Termination Provisions**

   a. We may deliver any notice instead of mailing it.  Proof of mailing of any notice shall be sufficient proof of notice.

   b. If this policy is cancelled, the named insured shown in the Declarations may be entitled to a premium refund.  If so, we will send the named insured shown in the Declarations the refund.  The premium refund, if any, will be computed according to our manuals.  However, making or offering to make the refund is not a condition of cancellation.

   c. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

   1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

   2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

B. Coverage will only be provided until the end of the policy period.

Personal Auto Policy A-711 (02/08)                                          23

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

---

## LOSS PAYABLE CLAUSE (PP 03 05 08 86)

---

Loss Payee:  <u>Named on the Declarations</u>

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement.  This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of  **your covered auto.** However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

24                          Personal Auto Policy A-711 (02/08)

## PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice or gross negligence.

*Bernard M Flynn*

President

Secretary

Personal Auto Policy A-711 (02/08)                                      25

A-711 (02/08)



RECYCLABLE

*Thank you for choosing NJM as your insurance carrier.*
*To reach our Customer Service Department, please call:*
*1-800-232-6600*

A-711c

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

# UNDERINSURED MOTORISTS COVERAGE - PENNSYLVANIA (STACKED)

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.
Coverage is provided where the Declarations shows a premium and a limit of liability.

## INSURING AGREEMENT

A. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

1. Sustained by an **insured**; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle.**

We will pay under this coverage only if "**1.**" or "**2.**" below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the **underinsured motor vehicle** have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

   a. Have been given prompt written notice of such tentative settlement; and

   b. Advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an **underinsured motor vehicle** is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and

2. Had a reasonable opportunity to protect our interests in the suit.

B. **Insured** as used in this endorsement means:

1. You or any **family member.**

2. Any other person **occupying your covered auto.**

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in "1." or "2." above.

C. **Underinsured motor vehicle** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, **underinsured motor vehicle** does not include any vehicle or equipment:

1. For which liability coverage is provided under Part "A" of this policy.

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained:

1. By you while **occupying**, or when struck by, any motor vehicle you own which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

2. By a **family member** who owns an auto, while **occupying**, or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

B. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any **insured:**

1. While **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion "B.1." does not apply to a share-the-expense car pool.

2. Using a vehicle without a reasonable belief that that **insured** is entitled to do so. This Exclusion "B.2." does not apply to a **family member** using **your covered auto** which is owned by you.

C. We do not provide Underinsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an accident involving an **underinsured motor vehicle**, unless the **bodily injury** sustained is a **serious injury.**

This Exclusion "C." does not apply if that **insured** is injured while **occupying** a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. Except as provided in Paragraph "B.", the limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident.  This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. If **bodily injury** is sustained in an accident by you or any **family member**, our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Underinsured Motorists Coverage shown in the Schedule or in the Declarations applicable to each vehicle. Subject to this maximum limit of liability for all damages, the most we will pay for **bodily injury** sustained by an **insured** other than you or any **family member** is the limit of liability shown in the Schedule or in the Declarations applicable to the vehicle the **insured** was **occupying** at the time of the accident.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997, 1998, 2002, 2006, 2008

PP 04 18 06 98
PP 04 19 11 08

This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part "A", Part "B" or Part "C" of this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this endorsement:

The following priorities of recovery apply:

**First**  The Underinsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the accident.

**Second**  The policy affording Underinsured Motorists Coverage to the **insured** as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

If we are the insurer against whom the claim is first made, we will pay, subject to the limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage, after we and all other contributing insurers agree:

1. Whether the **insured** is legally entitled to recover damages from the owner or operator of an **underinsured motor vehicle**; and

2. As to the amount of damages.

## ARBITRATION

A. If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

## ADDITIONAL DUTIES

A person seeking Underinsured Motorists Coverage must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **underinsured motor vehicle**.

## PART F - GENERAL PROVISIONS

Part "F" is amended as follows:

A. The following is added to the "Our Right To Recover Payment" Provision:

## OUR RIGHT TO RECOVER PAYMENT

Our rights do not apply under Paragraph "A." with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **underinsured motor vehicle**; and

2. Fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment.

B. The following is added to the "Two Or More Auto Policies" Provision:

## TWO OR MORE AUTO POLICIES

1. This provision does not apply to Underinsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Underinsured Motorists Coverage.

"CERTIFIED TO BE A TRUE COPY"

_KLM_
INT.

_12/20/11_
DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997, 1998, 2002, 2006, 2008

PP 04 18 06 98
PP 04 19 11 08

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA SCARDIGNO and                    :
MICHAEL SCARDIGNO                      :  CIVIL ACTION NO. 2:11-cv-07753
                                       :
        vs.                            :  Jury Trial Demanded
                                       :
NEW JERSEY MANUFACTURERS               :
INSURANCE COMPANY                      :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 29, 2011, a true and correct copy of the foregoing Answer with Affirmative Defenses of Defendant New Jersey Manufacturers insurance Company to Plaintiffs' Complaint was filed electronically with the Court.  Notice of this filing will be sent today to Jonathan Ostroff, Esquire, *Counsel for Plaintiffs*, via the Court's electronic filing system.

CURTIN & HEEFNER LLP

By: _Frank S. Guarrieri_

Frank S. Guarrieri, Esquire
Attorney for Defendant
Attorney I.D. # 25922

810040.1/45608